THE NORTH CAROLINA MUTUAL LIFE INS. CO. *v.* JOHN H. POWELL.

The *failure* of a mutual insurance company does not constitute a "failure of consideration," so as to defeat an action upon a premium note given by a person insured therein.

Such a company after its insolvency looses the power of insisting upon forfeitures of stock by its members for non-payment or otherwise.

If such a company before insolvency treat a member who has failed to pay as if he were still a member, this is a waiver of the right to declare his stock forfeited for the non-payment.

A resolution by such a company to wind up its affairs is equivalent to an assessment of 100 *per cent.* on the premium notes in order to enable it to meet its liabilities, &c.

The holders of policies in insolvent mutual insurance companies cannot, when sued upon their premium notes, claim that the *values* of their policies (supposing the same to be ascertained,) shall be set off in equity against their liabilities.—Syllabus in *Conigland* v. *The N. C. Mutual Ins. Co.*, Phil. Eq. 341.

CIVIL ACTION to recover the value of a promissory note, tried by his Honor, *Judge Tourgee,* at the Special (January) Term, 1874, of the Superior Court of WAKE county.

The following is the case proposed by the plaintiff's counsel and adopted by the presiding Judge, and transmitted with the transcript of the record, as the "case settled."

On the trial in the Court below, the plaintiff produced in evidence the act of incorporation, ratified 27th January, 1849, entitled "An act to incorporate a Mutual Life Insurance Company in the State of North Carolina," by which the plaintiff became an incorporated company ; and proved that under said act, the company was duly organized and went into operation sometime in the spring of the year, 1849.

Plaintiff then offered in evidence a promissory note, the execution of which by him, the defendant admitted in the words and figures following, to wit:

"$258.23                    GOLDSBORO, April 23d, 1865.

Twelve months after date, or sooner if required to meet assessments made by the company, I promise to pay to the North Carolina Mutual Life Insurance Company, at Raleigh, or order, two hundred and fifty-eight dollars and twenty-three cents, with interest at 6 *per cent. per annum*, for value received. No. 1202.

JOHN H. POWELL."

It was then proved by the plaintiff that at the time the note was executed, the United States forces had possession of Goldsboro in Wayne county, where the note was given, and had also taken possession of the city of Raleigh, where the plaintiff's office was situate, and performed its functions as a Mutual Insurance Company; and that the jurisdiction of the United States had been maintained within the two places aforesaid ever since, and had gradually from that time, been established and maintained over the whole State of North Carolina up to the present time—facts admitted by defendant.

Plaintiff then filed before the Court the affidavit of R. H. Battle, now receiver of the plaintiff corporation, under a decree in Equity of the United States Circuit Court for the District of North Carolina, and at the date when said note was given and for several years previous, and also subsequent thereto, Secretary of said corporation to the effect that it was not understood between the parties to said note, that it was solvable in money, of the value of Confederate currency at the time the note was given; but it was understood between the said parties, that said note was solvable in money of the value of the par funds of the United States.

And the plaintiff here rested the case.

The defendant then offered in evidence the policy of life insurance, and a printed pamphlet containing the by-laws, rules and instructions to the agents of the plaintiff corporation, all of which were admitted by the plaintiff to be genuine. He then offered to prove that when the said policy was issued to him,

on the 23d of April, 1851, he did not pay to the plaintiff in money the whole sum of $43.40, specified in said policy, as paid at that date, but paid only $21.70 thereof in money, and gave his note, in the form of the note now sued on, for the other $21.70; and that when the next annual premium of $43.40 fell due according to the terms of said policy, on the 23d of April, 1852, he paid only $21.70 of that annual premium and 6 *per cent.* interest on his note of $21.70 already given, in money, and paid off his said note and the other half of his annual premium, due 23d April, 1852, by giving a note in the form of the one now sued on, amounting to $43.40 therefor. That in like manner, from year to year, until the 23d day of April, 1865, he continued to pay only one-half of his annual premium specified in said policy, and 6 *per cent.* interest on his outstanding note in money, and to give a new note, including the amount of the principal of his outstanding note and the other half of the annual premium, due by him for the ensuing year, in the form above specified. That on the 23d April, 1865, he paid the plaintiff $21.70 in money, being one-half of his annual premium as aforesaid, due for the year ending the 23d April, 1866, and gave his note for $258.23, which included the other half of his annual premium, and the principal of his outstanding note, amounting at that time to $236.53; and he at the same time paid the plaintiff in money $14.19, being one year's interest on his said outstanding note for $236.53. That the note declared on by the plaintiff and offered in evidence, was the one for $258.23, given by defendant, as immediately hereinbefore stated, on the 23d April, 1865; and the consideration thereof, was the payment of his annual half premiums, already then accrued in the manner and under the circumstances, immediately hereinbefore stated That on the 23d of April, 1866, the defendant purposely failed to pay his annual premium, according to the terms of the aforesaid policy, either in money or by giving a note therefor, because the plaintiff corporation was at that time generally reputed to be insolvent, and as the defendant believed, was insolvent; and that the de-

fendant has never since paid, nor attempted to pay, any such annual premium.

It was conceded by the plaintiff that the directors of the plaintiff corporation has never at any time made any assessment on the note sued upon, against the defendant, to pay losses due to policy holders, whose policies had fallen in by death, and other debts of the corporation—unless the resolutions of the said directors, of the 6th of August, 1866, (annexed to the record,) and hereinafter more specifically referred to, amounted to such an assessment; or unless the proceedings in the Circuit Court of the United States, in the creditor's bill filed against the plaintiff in equity, before June Term, 1869, and which will be hereinafter more specifically stated, were equivalent thereto; and it was specially conceded by the plaintiff, that no such assessment had been made on the premium note of the defendant sued on, previous to the lapse of his policy, by his failure to renew his premium note, and pay his annual premium on the 23d of April, 1866.

The defendant then offered to prove by unwritten evidence, the terms of an oral agreement, entered into by and between the plaintiff and defendant, at and preceding the execution of the note given by the defendant to the plaintiff, for one-half of his first annual premium, and of the policy issued by the plaintiff to defendant's wife and children, on the 23d of April, 1851, of which agreement the said policy and note were in part execution, to the effect :-

1. That it was agreed and understood between the plaintiff and defendant, that any and all notes, including the one declared on, given by defendant in payment of half premiums, should not be collected at the date they became due by their tenor ;

2. That the outstanding premium notes should not be collected, but renewed as stated, except as to any assessment made for losses ;

3. That notice should be given of such assessment when made, before which the insured should not be in default ;

4. That such premium notes should only be paid after death and then be deducted from the amount due under the policy ;

5. That upon the non-payment of the annual premium, or the non-payment of the note for the half amount thereof, the entire agreement should be null, and the defendant discharged from all liability to the plaintiff upon his premium notes, or otherwise, except as to such assessments as may have been then made.

6. That this express oral contract was entered into between defendant and the plaintiff's agent, at the date mentioned, to wit: the 23d of April, 1851.

This evidence was rejected by the Court, and the defendant excepted.

Defendant then offered to prove by parol testimony, that the plaintiff knew of the alleged unwritten contract made with the defendant by the company's agent, and did not disaffirm the same, but accepted and renewed from time to time the notes given in pursuance thereof.

This evidence was rejected by the Court, and the defendant excepted.

Defendant offered to prove by oral testimony, that it was the usage of the plaintiff corporation, to make unwritten contracts of insurance, of the tenor of the oral contract alleged. This too was rejected by the Court, and the defendant again excepted.

Defendant then offered to prove that he did regularly renew his note for one-half the annual premiums, according to the unwritten contract alleged until the plaintiff became insolvent, and that he refused to renew, only in consequence of such insolvency. The plaintiff offered no objection to the defendant's proving, that he regularly renewed his notes, &c., until the plaintiff became insolvent, &c., but did object to his proving that he did these acts in accordance with the unwritten contract alleged. Objection of plaintiff sustained, and the evidence so far as it related to the unwritten contract alleged by defen-

dant was excluded by the Court. Again the defendant excepted.

The defendant offered to prove that no assessment had been made and no notice given to him, according to the tenor of the unwritten agreement alleged. Plaintiff did not object to the defendant's proving if he could, that no assessment had been made on his premium note and no notice thereof had been given to him, but did object to his proving that these acts had not been done according to the tenor of the unwritten agreement alleged. The Court excluded this evidence, as a part or consequence of such unwritten agreement, and as offered in connection therewith, but did not exclude it generally. Defendant excepted.

It was conceded by the plaintiff that at the date when the note sued on was given by defendant, to wit: 23d of April, 1865, the plaintiff corporation was unable to meet and pay its then existing liabilities as they matured; and it was further conceded that it had never been able since to meet and pay its existing liabilities as they matured; and that on the 4th September, 1869, when this action was instituted, the plaintiff was finally insolvent, and has so remained ever since and would never be able to pay off its existing debts, and have anything for division among its shareholders or members.

The defendant then offered in evidence a printed statement, admitted to be genuine, and which was made a part of the case, of the proceedings of a general called meeting of the members of the plaintiff corporation, held on the 6th of August, 1866, wherein a speedy winding up of the affairs of the company was resolved on, and the directors thereof ordered to carry the same into effect; and proved that the plaintiff had ever since the said 6th day of August, 1866, ceased to transact any business as a Life Insurance Company.

It was conceded by the defendant that he was, on the 23d of April, 1865, when his note was given, and had been for many years previous thereto, one of the local agents for the plaintiff, to receive applications for insurance, and to effect renewals

thereof, in a considerable district of country in and around Goldsboro, Wayne county.

The plaintiff then offered in evidence the record of an equity suit, in the Circuit Court of the United States for the North Carolina District, instituted before June Term, 1869, of said Court, by Elvira C. Lawrence and others, on behalf of himself and the other creditors of the plaintiff, against the plaintiff in this action. In the original bill of said suit, it was alleged, that the complainant therein and other creditors aforesaid, had obtained judgments for their debts, at law against the plaintiff in this action, had sued out executions thereon, and they had been returned totally unsatisfied, and praying the Circuit Court to take into its custody the assets of the North Carolina Mutual Life Insurance Company, and to appoint a receiver thereof, to take charge of and collect such assets, and distribute them among the creditors of said corporation, according to their respective rights. A decree of said Court in said cause, made at June Term, 1860, declaring said corporation insolvent, appointing one R. H. Battle, receiver of the assets thereof, and directing him, as such receiver, to institute proper actions in the State Courts for the collection of the assets of the corporation, preparatory to the distribution thereof among the creditors of the corporation. The plaintiff then proved, that although this action is conducted in the name of the plaintiff, yet, that it was in reality brought, and is in truth and fact carried on, by the said R. H. Battle, receiver as aforesaid, in the name of the plaintiff, in pursuance of the decree last aforesaid and for the benefit of the creditors of the plaintiff.

Upon the foregoing evidence, the defendant prayed his Honor to instruct the jury :

If they found that the plaintiff, at the time of taking the note now sued on, was insolvent, and that this fact was known to the plaintiff and not communicated to the defendant, nor known to him, and that, if this fact had been known to the defendant, he would not have executed the note, the plaintiff could not recover.

His Honor declined to give the instruction, as prayed, and the defendant excepted.

That the contracts between the plaintiff and defendant were mutual, concurrent and dependent, and that the insolvency of the plaintiff, and its admitted inability to pay the defendant's wife and children the amount of their policy, at any time hereafter, was a discharge of the defendant from his liability ; and, if not to the full amount, yet, to the extent of the present value of the policy, as of a solvent corporation. His Honor declining to give this instruction as prayed, the defendant excepted.

That if the jury find, that at the time of taking the note now sued for, the plaintiff was insolvent and concealed that fact from the defendant, and falsely represented to him, that it was solvent, and thereby induced the defendant to give the said note, when, but for such concealment and false representation, the defendant would not have given the same, the plaintiff could not recover. His Honor declined to give this instruction as prayed ; stating to the jury that any concealment, or representation of its pecuniary condition, upon the part of the plaintiff to the defendant, at the time when the note was given, which would vitiate the same, must have been *fraudulent* as well as false ; and there had been no evidence given to the jury of any fraudulent concealment of, or false and fraudulent representations as to its pecuniary condition, by the plaintiff to the defendant, at the time when the note was given. To this instruction, the defendant again excepted.

That the plaintiff, having at a general meeting of his stockholders or members, held on the 6th of August, 1866, adopted the resolution to wind up the affairs of the company, and to discontinue its business from that date, and this action not having been instituted, until the 4th day of September, 1869, more than three years having elapsed since the disolution of the plaintiff corporation, this action could not now be maintained by it. His Honor declined to instruct the jury as requested, and the defendant again excepted.

That the note sued on was subject to the scale for Confederate

money, provided by the ordinance of the convention and the act of the General Assembly ; and if entitled to recover, the plaintiff was only entitled to recover the amount specified in said note, reduced by said scale.

His Honor refused to give this instruction as prayed, and told the jury that the presumption arising under the ordinance and act of the General Assembly, that the note sued on was solvable in money of the value of Confederate currency, at the date when the note was given, was in this case rebutted by uncroverted evidence. Defendant again excepted.

The defendant then asked his Honor to rule, that this suit was not commenced in due time, which ruling his Honor refused to make, and the defendant excepted.

In support of his first counter-claim, the defendant prayed his Honor to instruct the jury, that if he was induced to pay to the plaintiff the sum of $21.70 at the time of the execution of the note sued on, the plaintiff then being insolvent, by the false representation of the plaintiff's agents and officers, as to its solvency, and the concealment of its true pecuniary condition, then the defendant was entitled, as against the plaintiff, to a counter-claim of $21.70 with interest.

His Honor declined to give this instruction as prayed, stating to the jury, that there was no evidence of any fraudulent concealment of its pecuniary condition, or of any false and fraudulent representations as to its solvency, by the plaintiff, or its agents or officers, whereby the defendant had been induced to pay it the said sum of $21.70, at the time when he executed the note. Again the defendant excepted.

The jury returned a verdict in favor of the plaintiff. Judgment in accordance therewith, and appeal by defendant.

*Fuller & Ashe, Smith & Strong* and *Batchelor*, for appellant.

*Fowle, Battle & Son*, and *Haywood*, contra.

SETTLE, J. All of the important questions presented by this

record, were considered and decided in *Conigland* v. *The N. C. M. Insurance Co.*, Phil. Eq., 341, and the learned counsel who argued this case, at the present term, candidly admitted that authority to be against him, and decisive of this action, unless the Court reversed that decision.

After giving to the able argument of counsel due consideration, we see no reason to abandon any of the positions established by that decision.

It is a well considered opinion of the Court, delivered by the Chief Justice, and, as we have before said, meets fully the merits of this case. Some of the evidence offered by the defendant and rejected by the Court was admissible, but we need not consider it, for if all that was competent had been admitted, it could not have changed the result. So the defendant has suffered no harm from the rejection of evidence.

The judgment of the Superior Court is affirmed.

PER CURIAM.                                Judgment affirmed.